1  MORELLO LAW, P.C.
   JUSTIN A. MORELLO (SBN: 239250)
2  justin@morellolawpc.com
   3170 Fourth Avenue, Suite 250
3  San Diego, CA 92103
   Telephone:  619.277.4677
4  Facsimile:   619.924.4268

5  Attorneys for Marc Alford

6

7

8

9

10                 UNITED STATES DISTRICT COURT

11                 EASTERN DISTRICT OF CALIFORNIA

12 | MARK ALFORD,                  | Case No.: 1:22-cv-01056-ADA-CDB

13 |         Plaintiff,

14 |     v.                         | **FIRST AMENDED COMPLAINT FOR DAMAGES**

15 | UNITED STATES OF AMERICA,

16 |         Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

Plaintiff Mark Alford, by his attorney, brings this First Amended Complaint against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. Alford seeks damages arising out of his former employer Toiyabe Indian Health Project, Inc. ("TIHP")'s unlawful retaliation and wrongful termination of his employment.

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this claim for money damages against the United States under 28 U.S.C. § 1346(b)(1).

2. Plaintiff has exhausted his FTCA claims. Plaintiff filed all required administrative forms with each of the relevant agencies of the United States more than six months ago. There has been no final disposition of his administrative claims and Plaintiff now exercises the option to deem those claims denied under 28 U.S.C. § 2675(a).

3. A substantial portion of the acts and omissions giving rise to the claims occurred in this district. Venue is therefore appropriate under 28 U.S.C. §§ 1391 and 1402(b).

## PARTIES

4. Plaintiff Mark Alford is the former Chief Operations Officer of TIHP. He is a resident of the State of California.

5. Toiyabe Indian Health Project, Inc., a subcontractor of the California Rural Indian Health Board, Inc., who in turn is a subcontractor of United States Department of Health and Human Services and covered by the Federal Tort Claims Act under the applicable Self-Determination Contract, No. 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, subsection (b)(15)(D)(5) which provides:

(i) For the purposes of Federal Tort Claims Act coverage, the contractor and its employees are (including individuals performing personal services contracts) are [sic] deemed to be employees of the Federal government while performing work under the contract. This status is not changed by the source of the funds used by the contractor to pay the employee's salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the contractor.

(ii) Under this contract, the contractor's employees may be required as a condition fo employment to provide health services to non-0IHS beneficiaries in order to meet contractual obligations. These services may be

provided in either contractor or non-contractor facilities. The employee's status for Federal Tort Claims Act purposes is not affected.

(iii) Subpart M – Federal Tort Claims Act Coverage General Provisions of the Indian Self-Determination regulations, 25 C.F.R. §§ 900.180-230, are incorporated herein.

6. TIHP operates out of Bishop, California.

7. Defendant United States of America is a proper defendant under the FTCA. The United States is sued for the personal injuries of Alford cause by the wrongful acts or omissions of its sub-contractor, TIHP. Those contractors were acting within the scope of their employment under circumstances where the United States, if a private person, would be liable to Alford in accordance with the laws of the State of California.

## ALLEGATIONS

8. On or about March 25, 2019, TIHP, hired Alford as its Chief Operations Officer. His initial salary was $135,000 with an agreement for a potential increase that salary if, at the end of six months, TIHP determined he met or exceeded expectations. The position included additional benefits such as medical and life insurance, a 401k and a 3% employer match, an additional 6% match after completing a year of service, vacation and sick leave, paid holidays, and additional fringe benefits.

9. Throughout his employment, Alford provided TIHP with excellent performance, even to the point where in June 2019, TIHP's CEO, Kori Novak told Alford that he would be receiving a raise after six months of employment.

10. But even as Alford provided exemplary service, he noticed issues at TIHP that were not right, and at times, were unlawful.

11. Knowing he had a duty to report what he observed, on or about July 23, 2019, Alford filed his initial grievance with TIHP, reporting wrongful and unlawful conduct by Novak.

12. This initial grievance led to a series of additional reports by Alford of other wrongful and unlawful practices at TIHP.

13. When making these grievances and reports, Alford followed all procedures as described by TIHP.

14. Through his initial grievance and subsequent reports, Alford disclosed to TIHP and its Board that:

- Novak had engaged in a campaign of defamation against him;
- Novak had created a hostile work environment at TIHP;
- Novak wrongfully retaliated against employees;
- Novak discriminated against native employees;
- Novak instituted policies and procedures that did not provide native preference in her hiring and interview practices;
- Novak had falsely accused him a HIPAA violation in retaliation for Alford making his initial complaint;
- Novak engaged in the misappropriation of government funds;
- TIHP's Dialysis program was not properly licensed and was not being overseen by qualified doctors;
- Novak had caused misrepresentations to the California Department of Health to be made; and
- Patients were not being properly notified before they, or their provider, were being charged for medical services.

15. Unfortunately, Novak improperly learned of Alford's good faith complaints. Upon learning of Alford's complaints, she continued to defame him, concocted an accusation that Alford had somehow violated HIPAA (a charge that, as described below, was found to be without evidence), refused to meet with Human Resources regarding Alford's complaint, placed Alford on administrative leave, and ultimately caused TIHP to terminate Alford.

16. As the California Unemployment Insurance Appeals Board Found, this termination was not due to misconduct or breach of duty to TIHP. Indeed, as TIHP's own paperwork shows, Alford remains eligible for rehire.

17. Not only will witnesses testify that THIP's stated reason for Alford's termination was false and pretextual, the Bishop Tribal Employment Rights Commission ("TERO") considered Novak's baseless accusation that Alford had somehow violated HIPAA and specifically found that "No evidence was found that a HIPAA violation occurred." TERO also found that there was "sufficient evidence" to support Alford's "retaliation claim and claim regarding unfair employment practices." Notably, TIHP has ignored TERO's ruling and has not complied with their order or findings.

18. Novak provided services to TIHP under a 638 contract and was thus considered an employee of the Department of Health and Human Services (DHHS) when she illegally retaliated against Alford.

19. Management employees of the DHHS are prohibited from retaliating against subordinates who make protected complaints under, among other applicable statutes, the Whistleblower Protection Act of 1989, 41 U.S.C. § 4712 and Presidential Policy Directive 19 (PPD-19).

20. Novak's actions violated a legal mandate not to illegally retaliate against a protected whistleblower. In this way, by choosing to violate federal law in her actions toward Alford, she was not exercising a protected discretionary function.

## COUNT ONE

### (Retaliation)

21. Plaintiff references and realleges all above allegations.

22. During his employment with THIP, California Labor Code section 1102.5 was binding on Defendant.

23. California Labor Code section 1102.5(b) prohibits employers from retaliating against an employee for disclosing information regarding a violation or noncompliance with the law to a person with authority over the employee or an employee who has the authority to investigate, discover, or correct the violation or noncompliance.

24. Regulation of working conditions is critical for protecting employees in California as well as integral to maintaining the general welfare of the State's population. Labor Code section 232.5 protects an employee's right to discuss working conditions. California law also requires employers to provide a workplace free from harassment, discrimination, and retaliation. TIHP is required, by law, to provide native preference its hiring and new job development. The California Department of Public Health requires that Dialysis programs be overseen by appropriate doctors and provider groups and that any such unit be properly licensed. California law also requires that

patients be notified before they are charged, or their provider is charged, for medical services.

25. Novak provided services to TIHP under a 638 contract and was thus considered an employee of the Department of Health and Human Services (DHHS) when she illegally retaliated against Alford.

26. Management employees of the DHHS are prohibited from retaliating against subordinates who make protected complaints under, among other applicable statutes, the Whistleblower Protection Act of 1989, 41 U.S.C. § 4712 and Presidential Policy Directive 19 (PPD-19).

27. Novak's actions violated a legal mandate not to illegally retaliate against a protected whistleblower. In this way, by choosing to violate federal law in her actions toward Alford, she was not exercising a protected discretionary function.

28. When Alford reported that Novak defamed him, created a hostile work environment at TIHP, wrongfully retaliated against employees, discriminated against native employees, did not provide native preference in her hiring and interview practices, misappropriated government funds, that the Dialysis program was not properly licensed and was not being overseen by qualified doctors, that Novak had made misrepresentations to the California Department of Health, and that patients were not being properly notified before they, or their provider, were being charged for medical services, Alford had a good faith belief that he was reporting violations of applicable law and public policy.

29. Alford's reporting of such information was a substantial motivating factor in TIHP's decision to terminate him.

30. As a direct, foreseeable, and proximate of Defendant's conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

31. As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

32. As a result of Defendant's deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with Defendants' wrongful acts and sufficient to punish and deter future similar reprehensible conduct, as well as attorneys' fees under California Code of Civil Procedure section 1021.5.

## COUNT TWO
### (Wrongful Termination)

33. Plaintiff references and realleges all above allegations.

34. When an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions. *Tameny v. Atlantic Richfiled Co.,* (1980) 27 Cal.3d 167, 170.

35. Regulation of working conditions is critical for protecting employees in California as well as integral to maintaining the general welfare of the State's population. Labor Code section 232.5 protects an employee's right to discuss working conditions. California law also requires employers to provide a workplace free from harassment, discrimination, and retaliation. TIHP is required, by law, to provide native preference its hiring and new job development. The California Department of Public Health requires that Dialysis programs be overseen by appropriate doctors and provider groups and that any such unit be properly licensed. California law also requires that patients be notified before they are charged, or their provider is charged, for medical services.

36. Novak provided services to TIHP under a 638 contract and was thus considered an employee of the Department of Health and Human Services (DHHS) when she illegally retaliated against Alford.

37. Management employees of the DHHS are prohibited from retaliating against subordinates who make protected complaints under, among other applicable statutes, the Whistleblower Protection Act of 1989, 41 U.S.C. § 4712 and Presidential Policy Directive 19 (PPD-19).

38. Novak's actions violated a legal mandate not to illegally retaliate against a protected whistleblower. In this way, by choosing to violate federal law in her actions toward Alford, she was not exercising a protected discretionary function.

39. When Alford reported that Novak defamed him, created a hostile work environment at TIHP, wrongfully retaliated against employees, discriminated against native employees, did not provide native preference in her hiring and interview practices, misappropriated government funds, that the Dialysis program was not properly licensed and was not being overseen by qualified doctors, that Novak had made misrepresentations to the California Department of Health, and that patients were not being properly notified before they, or their provider, were being charged for medical services, Alford had a good faith belief that he was reporting violations of applicable law and public policy.

40. Alford's reporting of such information was a substantial motivating factor in TIHP's decision to terminate him.

41. As a direct, foreseeable, and proximate of Defendant's conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

42. As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of

1  reputation, and mental and physical pain and anguish, all to her damage in a sum to be
2  established according to proof.
3      43.    As a result of Defendant's deliberate, outrageous, despicable conduct,
4  Plaintiff is entitled to recover punitive and exemplary damages in an amount
5  commensurate with Defendants' wrongful acts and sufficient to punish and deter future
6  similar reprehensible conduct, as well as attorneys' fees under California Code of Civil
7  Procedure section 1021.5.

## COUNT THREE

### (Intentional Infliction of Emotional Distress)

10      44.    Plaintiff references and realleges all above allegations.
11      45.    Defendant's intentional conduct was extreme and outrageous. Defendant
12  intended to cause Plaintiff to suffer extreme emotional distress. Plaintiff did suffer
13  extreme emotional distress.
14      46.    As a direct, foreseeable, and proximate result of Defendant's conduct,
15  Plaintiff has sustained and continues to sustain substantial losses in reputation,
16  promotions, and other employment opportunities.
17      47.    As a direct, foreseeable, and proximate result of Defendant's conduct,
18  Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of
19  reputation, and mental and physical pain and anguish, all to her damage in a sum to be
20  established according to proof.

## PRAYER FOR RELIEF

22  WHEREFORE, Plaintiff prays judgment as follows:
23      A.    For damages in an amount according to proof;
24      B.    For interest as permitted by law;
25      C.    For penalties as permitted by law;
26      D.    For exemplary and punitive damages;
27      E.    For reasonable costs; and
28      F.    For such other and further relief as the Court deems proper.

1
2  Dated: March 17, 2023                MORELLO LAW, P.C.
3
4                                       By: /s/ JUSTIN A. MORELLO
                                           JUSTIN A. MORELLO (SB# 239250)
5                                          justin@morellolawpc.com
6                                       Attorneys for Plaintiff Mark Alford
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28